UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
**MARY KUTTY THOMAS, et. al.**

                        **Plaintiffs,**         **MEMORANDUM**
                                                      **AND ORDER**

    -against-

                                                                  **08-CV-3250 (RLM)**

**EMILY O'BRIEN, et al.**

                        **Defendants.**
------------------------------------------------------------x
**THOMAS VARUGHESE,**

                        **Plaintiffs,**         **08-CV-3448 (RLM)**

    -against-

**EMILY O'BRIEN, et. al.**

                        **Defendants.**
------------------------------------------------------------x

**ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:**

The above-captioned diversity actions, Docket Nos. 08-CV-3250 ("the Thomas case") and 08-CV-3448 ("the Varughese case"), arose out of the same motor vehicle accident on August 14, 2005. Plaintiffs Mary Kutty Thomas, Abraham Thomas, Anitha Thomas, and Ancy Thomas ("the Thomas plaintiffs") brought the Thomas case against defendants Emily O'Brien and Eileen O'Brien ("the O'Brien defendants") on August 8, 2008, seeking damages for injuries sustained by them when a car driven by defendant Emily O'Brien ("O'Brien") collided with a car driven by Thomas Varughese ("Varughese"), in which the Thomas plaintiffs were all passengers.  Subsequently, the O'Brien defendants answered the Thomas plaintiffs'

complaint and filed a cross-claim against Varughese,[1] seeking indemnification for any potential recovery by the Thomas plaintiffs.  See O'Brien Defs. Answer (Sept. 18, 2008), Thomas case D.E. #2; O'Brien Defs. Am. Answer (Sept. 26, 2008), Thomas case D.E. #4.

Meanwhile, on August 25, 2008, Varughese initiated the Varughese action against the O'Brien defendants, and the parties in both cases consented to have them handled for all purposes by a magistrate judge.  See Consent to Jurisdiction by U.S. Magistrate Judge (Nov. 6, 2008), Thomas case D.E. #11; Consent to Jurisdiction by U.S. Magistrate Judge (Mar. 24, 2009), Varughese case D.E. #14.  Because the two cases involved the same parties and factual circumstances, the Court directed that discovery and pretrial proceedings in both matters be coordinated.  See Order (Jan. 30, 2009), Thomas case D.E. #18; Varughese case D.E. #11.

On December 8, 2009, the O'Brien defendants filed a motion for summary judgment in the Thomas case against two of the four Thomas plaintiffs -- i.e., Abraham Thomas ("Abraham") and Anitha Thomas ("Anitha") -- alleging that those two plaintiffs failed to meet the threshold requirements for a "serious injury" as defined under New York State Insurance Law §§ 5102(d) and 5104(a).  O'Brien Defs. Mot. for Summ. J. (Dec. 8, 2010), Thomas case D.E. #53.  The O'Brien motion was joined by cross-claim defendant Varughese.  See Varughese Letter (Dec. 8, 2009), Thomas case D.E. #59.  For the reasons set forth below, this Court grants summary judgment against Abraham Thomas and Anitha Thomas, and orders the dismissal of their claims in the Thomas case.

---

[1] The Thomas plaintiffs had initially named Varughese (their relative) as a defendant, but they discontinued their claims against him on November 7, 2008.  See Stip. of Dismissal (Nov. 7, 2008), Thomas case ECF Docket Entry ("D.E.") #10, 12.

On December 18, 2009, Varughese moved for partial summary judgment on liability in the Varughese case, on the ground that no genuine issue of material fact exists that O'Brien "wholly caused the collision, as a matter of law." Pl. Varughese Mot. Summ. J. (Dec. 18, 2010), Varughese case D.E. #42. The Court assumes, for the purposes of this Memorandum and Order, that such motion, if granted, would also dispose of any cross-claims against Varughese in the Thomas matter. However, for the reasons detailed below, this Court concludes that genuine issues of material fact exist regarding the comparative negligence of Varughese, and therefore denies his request for partial summary judgment on liability.

## FACTUAL BACKGROUND

### I. The Accident

On August 14, 2005, a vehicle driven by Emily O'Brien (and owned by and registered to Eileen O'Brien) collided with a vehicle driven by Thomas Varughese, at the intersection of 80th Avenue and 268th Street in Queens County, New York. See Compl. ¶¶ 8, 9, 26, Thomas case D.E. #1. Both drivers agree that the accident took place at approximately three o'clock in the afternoon (3:00 p.m.). See Deposition of Emily O'Brien ("O'Brien Dep.") at 6 (lines 18–21), Thomas case D.E. #62-2; Deposition of Thomas Varughese ("Varughese Dep.") at 9 (lines 6–9), Thomas case D.E. #61-5.

Prior to the collision, O'Brien had been traveling along 268th Street for approximately five to eight minutes before she came to a traffic stop sign that regulated her entry into the intersection at 80th Avenue. See Pl. Varughese Rule 56.1 Statement ¶¶ 2, 11, Varughese case D.E. #42-3; O'Brien Defs. Rule 56.1 Response ¶¶ 2, 11, Varughese case D.E. #49. Varughese, on the other hand, had been traveling east along 80th Avenue, and there was no

stop sign to regulate his entry into the intersection at 268th Street.  See Pl. Varughese Rule 56.1 Statement ¶ 12;  O'Brien Defs. Rule 56.1 Response ¶ 12.

There is conflicting evidence regarding the clarity of O'Brien's line of sight looking left and right at the stop sign, and whether and when Varughese saw the O'Brien vehicle prior to impact.  However, it is undisputed that Varughese had an unobstructed view as he approached the intersection and that O'Brien did not see the Varughese vehicle at any time prior to impact.  See Pl. Varughese Rule 56.1 Statement ¶¶ 13, 19;  O'Brien Defs. Rule 56.1 Response ¶¶ 13, 19.  While both parties also agree that 80th Avenue is "a two-way street with one lane in each direction divided by yellow lines with room for parking on the sides," see Pl. Varughese Rule 56.1 Statement ¶ 6;  O'Brien Defs. Rule 56.1 Response ¶ 27, O'Brien further contends (and a photograph confirms) that a bicycle lane on either side separates the traffic lanes from the parking lanes.  See O'Brien Defs. Rule 56.1 Response ¶ 27; Pl. Varughese Mot. Ex. J, Varughese case D.E. #46-4.

## II.  The Injuries to Anitha Thomas and Abraham Thomas

Plaintiffs Anitha and Abraham Thomas were among the passengers in the Varughese vehicle at the time of the accident.  Subsequent to the accident, Anitha Thomas complained of injuries to her left shoulder, neck, and left knee.  See O'Brien Defs. Rule 56.1 Statement ¶ 6, Thomas case D.E. #56; Thomas Pls. Rule 56.1 Response ¶ 6, Thomas case D.E. #66.  Anitha received physical therapy to treat these injuries, which treatment she later terminated by her own choice.  See O'Brien Defs. Rule 56.1 Statement ¶ 7; Thomas Pls. Rule 56.1 Response ¶ 7.  While plaintiffs appear to agree that Anitha did not immediately miss any time from her employment, they dispute the relevance of that fact because Anitha was on summer vacation

from her job as a schoolteacher at the time of the accident.  See Thomas Pls. Rule 56.1 Response ¶ 8.

Abraham Thomas also complained of injuries from the August 14, 2005 accident.  These injuries were located in his right shoulder, right knee, and back.  See O'Brien Defs. Rule 56.1 Statement ¶ 14; Thomas Pls. Rule 56.1 Response ¶ 14.  Abraham missed at most one or two days from work after the accident, and received physical therapy for only two and a half months.  See O'Brien Defs. Rule 56.1 Statement ¶¶ 15, 16; Thomas Pls. Rule 56.1 Response ¶¶ 15, 16.  The parties do not appear to contest the nature and extent of the injuries that Abraham sustained.  See infra pp. 12–13.

## DISCUSSION

### I. Summary Judgment Standard

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may not be granted unless the record "show[s] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party bears the burden of "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  Once the movant does so, the non-moving party may not rest upon the allegations or denials of her pleading but must set forth specific facts that raise a genuine issue for trial.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Samuels v. Mockry, 77 F.3d 34, 36 (2d Cir. 1996).  "In determining whether there is a genuine issue of material fact, the court must resolve all

ambiguities, and draw all inferences, against the moving party." Sista v. CDC Ixis N.A., Inc., 445 F.3d 161, 169 (2d Cir. 2006) (citations omitted).

## II.     Plaintiff Varughese's Motion for Summary Judgment on Liability

Plaintiff (and cross-claim defendant in the Thomas case) Varughese moves for summary judgment on the issue of liability in the Varughese case, arguing that no genuine issue of fact exists as to whether defendant Emily O'Brien was the sole proximate cause of the automobile collision. See generally Pl. Varughese Mot. (Dec. 18, 2009), Varughese case D.E. #42. O'Brien disagrees, arguing that there is sufficient evidence to sustain a finding of comparative negligence on the part of Varughese. See Affirmation in Opposition ("O'Brien Defs. Aff.") ¶¶ 4, 14, Varughese case D.E. #47. The parties correctly assume that New York law applies to this action. See generally Pl. Varughese Mot.; O'Brien Defs. Aff.

A driver approaching an intersection along a roadway with a stop sign must yield the right-of-way to another driver who approaches the same intersection from another street without a traffic control device, such as a through highway. See N.Y. Veh. & Traf. Law § 1142(a) (McKinney 2010). A driver who fails to yield the right-of-way is negligent as a matter of law, and the question of whether the driver stopped at the stop sign will not dispose of the issue. See Goemans v. County of Suffolk, 868 N.Y.S.2d 753, 754-55 (2d Dep't 2008) (collecting cases). Furthermore, courts impose upon every driver a requirement to see that which she "should have seen" through the proper use of her senses. Id. at 755; Miller v. Richardson, 852 N.Y.S.2d 530, 532 (4th Dep't 2008).

Nevertheless, "it cannot be said as a matter of law that one driver's conduct was the sole proximate cause of the accident simply because his approach into the intersection was

regulated by a stop sign whereas no traffic control devices regulated the other driver's approach." Nevarez v. S.R.M. Mgt. Corp., 867 N.Y.S.2d 431, 433 (1st Dep't 2008) (quoting Wilson v. Trolio, 816 N.Y.S.2d 355 (1st Dep't 2006)); see Pappalardi v. Jones, 813 N.Y.S.2d 904, 904–05 (1st Dep't 2006). First, there may be issues of fact as to which of the two drivers had the right-of-way upon entering the intersection. In Nevarez, the Appellate Division affirmed the trial court's denial of a motion for summary judgment filed by a defendant (Rodriguez) involved in an intersection collision with a plaintiff who, in contrast to the defendant, approached the intersection from a roadway controlled by a stop sign. The Second Department explained:

> [P]laintiff has raised an issue of fact as to whether Rodgriguez had the right-of-way. Plaintiff testified not only that she stopped at the stop sign, but that she observed no cars at or near the other side of the intersection before she proceeded to drive into the intersection. While Rodriguez testified that he had the right-of-way at the time he entered the intersection, the dispute about which car arrived at and left the intersection first raises factual issues to be resolved by the trier of fact. The jury is free to reject Rodriguez's allegations that plaintiff failed to properly yield to crossing traffic before proceeding into the intersection and attribute the cause of the accident to Rodriguez's conduct of entering the intersection when he did not have the right-of-way.

867 N.Y.S.2d at 433.

Furthermore, even if a party presents uncontroverted evidence that he had the right-of-way upon entering the intersection, summary judgment is not warranted where the record creates questions of fact demonstrating that driver's comparative negligence. See id.; Moe v. United States, ___ F.Supp.2d ___, 2009 WL 3719187, at *9 (W.D.N.Y. Nov. 5, 2009) ("[A] genuine issue of material fact as to whether Plaintiff was comparatively negligent in causing

the accident will preclude summary judgment in Plaintiff's favor."). Under the doctrine of comparative negligence, "a driver who lawfully enters an intersection may still be found partially at fault . . . if he or she fails to use reasonable care to avoid a collision with another vehicle in the intersection." Romano v. 202 Corp., 759 N.Y.S.2d 365, 365 (2d Dep't 2003) (quoting Siegel v. Sweeney, 697 N.Y.S.2d 317, 318 (2d Dep't 1999)); accord Nevarez, 867 N.Y.S.2d at 433. Summary judgment thus should not be granted where the parties' proof presents significant factual issues as to whether the driver with the right-of-way could have used reasonable care to avoid the collision. See Nevarez, 867 N.Y.S.2d at 433 (denying summary judgment "because the record demonstrates questions of fact as to [defendant's] comparative negligence . . . . If plaintiff's vehicle had already started to enter the intersection when [defendant] approached it, defendant had a duty to use reasonable care to avoid the collision."); Romano, 759 N.Y.S.2d at 365–66 (that one driver allegedly "ran" a stop sign did not preclude a finding that negligent conduct by the other driver contributed to the accident).

Measured against the aforesaid legal principles, the record in this case does not warrant entry of summary judgment in Varughese's favor.[2]

---

[2] The Court's conclusion is in no way based on O'Brien's argument that Varughese was traveling at an excessive rate of speed, as O'Brien has offered no admissible evidence to establish that fact. The only proof cited by O'Brien -- who did not see the SUV before the collision, see O'Brien Dep. at 25 (lines 7–25), 26 (lines 12–15) Varughese case D.E. #44-1 -- is an accident report prepared by the police officer who responded to the scene. See O'Brien Defs. Aff. ¶ 14, Varughese case D.E. #47. The police officer did not, however, observe the accident, see O'Brien Defs. Aff. Ex. A, Varughese case D.E. #47-1, and the speeding ticket issued to Varughese appears to have been based solely on O'Brien's statement to the officer, which in turn relayed a hearsay remark from an unidentified witness, see O'Brien Dep. at 42

(continued…)

In his deposition testimony, Varughese stated that as he traveled eastbound on 80th Street approaching 268th Street, he had an unobstructed view of the intersection; nevertheless, he first became aware of O'Brien's vehicle when he felt the impact as it struck his SUV. See Varughese Dep. at 13 (lines 16–19), 15 (lines 9–13, 17–24), Thomas case D.E. #61-5.[3] Despite his unequivocal testimony that he did not see the O'Brien vehicle until the collision, Varughese's motion papers assert as undisputed fact that Varughese "saw defendant Emily O'Brien enter the intersection at the same time [as he did] and swerved to avoid being struck." Pl. Varughese Rule 56.1 Statement ¶ 14, Varughese case D.E. #42-3. In support of this

---

[2](...continued)
(lines 7–25), 43 (2-10).

O'Brien mistakenly relies on cases such as the Supreme Court's decision in Beech Aircraft Corp. v. Rainey, 488 U.S. 153 (1988), in urging the admissibility of the entire police report. O'Brien Defs. Mem. at 4, Varughese case D.E. #48. In Beech Aircraft, which concerned the admissibility of public records and reports under Rule 803(8) of the Federal Rules of Evidence, the Supreme Court made clear that "a trial judge has the discretion, and indeed the obligation, to exclude an entire report or portions thereof . . . that she determines to be untrustworthy." 488 U.S. at 167-68; accord Paolitto v. John Brown E.&C., Inc., 151 F.3d 60, 64 (2d Cir. 1998). Where, as here, the proponent of a portion of a police report "fail[ed] to lay any foundation for the applicability of a hearsay exception," the Court should exclude that evidence as untrustworthy. See Gervacio v. Zall, 345 F.App'x 638, 2009 WL 2840743, at *2 (2d Cir. Sept. 4, 2009) (sustaining trial court's exclusion of police report) (citing Fed. R. Evid. 803(8) advisory committee's note to 1972 Proposed Rules ("Police reports have generally been excluded except to the extent to which they incorporate firsthand observations of the officer."); Fed. R. Evid. 803(6) advisory committee's note to 1972 Proposed Rules (noting that information in a police report supplied by a bystander ordinarily is inadmissible)).

Accordingly, as O'Brien has not laid a proper foundation for the report's references to Varughese's excessive rate of speed, the Court does not consider those portions in ruling on Varughese's motion for summary judgment.

[3] Varughese testified that his foot was on the gas pedal at the time of impact. See Varughese Dep. at 16 (lines 21–25).

alternate account of the accident, Varughese cites his statement to the police officer who prepared the accident report.[4]  These discrepancies in Varughese's descriptions of the accident create factual issues for a jury to resolve, particularly given O'Brien's contrary version of events.  See Carlton v. Mystic Transp., Inc., 202 F.3d 129, 137 (2d Cir. 2000); Rodriguez v. Modern Handling Equip., 604 F.Supp.2d 612, 623–24 (S.D.N.Y. 2009); Analytical Surveys, Inc. v. Tonga Partners, L.P., No. 06-CV-2692 (KMW)(RLE), 2008 WL 4443828, at *15–*16 (S.D.N.Y. Sept. 29, 2008).

O'Brien testified at her deposition that at no point did she observe Varughese's vehicle moving east on 80th Street in her direction, even after looking to her left and right on multiple occasions.  See O'Brien Dep. at 23 (lines 24–25), 25 (lines 7–15), Thomas case D.E. #62-2.  O'Brien also averred that she stopped at least twice—first, at the stop sign and again at the bike lane, at which point her car was already partway into the intersection, approximately two to three feet from the stop sign.  See id. at 23–25, 36 (lines 16–25), 37 (lines 1–6).  Moreover, O'Brien testified that it was the Varughese vehicle, not hers, that produced the collision.  See id. at 24 (lines 18–25), 25.[5]

As in Nevarez, the conflicting versions of the accident thus raise triable issues of fact as

---

[4] See Police Report, Ex. G, Varughese case D.E. #45-1.  Varughese apparently does not dispute that *O'Brien* would be entitled to introduce into evidence Varughese's statement to the police officer, as it constitutes an admission of a party opponent, see Fed. R. Evid. 801(d)(2), contained in a record of regularly conducted activity and/or public record and report.  See Fed. R. Evid. 803(6), (8).

[5] Varughese suggests, without citation to the record, that the "physical evidence" belies O'Brien's account of the accident.  Pl. Varughese Mem. at 5, Varughese case D.E. #42-2.  To the extent that Varughese is relying on photographs of the resulting damage to the two vehicles, the poor quality of the copies supplied to the Court renders them unenlightening.  See Pl. Varughese Mot. Ex. H, Varughese case D.E. #46-1 and 46-2.

who had the right-of-way as the vehicles entered the intersection, and whether Varughese failed to use reasonable care to avoid the collision. See Nevarez, 867 N.Y.S.2d at 433. Indeed, Varughese's own testimony raises questions regarding the latter issue. According to Varughese, his wife, Mary Kutty Thomas, who was seated in the front passenger seat of his SUV, started screaming before the impact occurred. See Varughese Dep. at 10 (lines 11–22), 16 (lines 4–7), Thomas case, D.E. #61-5.  A reasonable jury could conclude that Varughese was comparatively negligent in failing to see that which he should have seen with the use of his senses and in failing to apply his brakes or employ any evasive maneuvers to avoid the O'Brien vehicle.

This case thus bears far more resemblance to the facts and testimony in Nevarez -- in which the court declined to grant summary judgment on liability -- than to the cases on which Varughese relies. For example, in Jaramillo v. Torres, 875 N.Y.S.2d 197, 197-98 (2d Dep't 2009), the Appellate Division granted defendants' motion for summary judgment on liability where, in contrast to Varughese, they "present[ed] uncontroverted evidence that the plaintiff proceeded into the intersection without yielding the right of way . . . ." And in DeLuca v. Cesda, 875 N.Y.S.2d 520, 521 (2d Dep't 2009), it was undisputed that the defendant tow truck operator failed to come to a complete stop before entering onto the roadway from a parking lot. In contrast to those cases, O'Brien's testimony, if credited by a jury, would support a finding that she entered the intersection first, after stopping at the stop sign, and/or that her vehicle was at least partially within the intersection and visible to Varughese, had he been mindful of his surroundings. Given these disputed factual issues, the Court denies Varughese's motion for summary judgment on liability.

### III. Defense Motion for Summary Judgment on Threshold Issues

In the <u>Thomas</u> case, defendant O'Brien and cross-claim defendant Varughese move for summary judgment against plaintiffs Abraham and Anitha Thomas, on the ground that neither suffered a "serious injury," within the meaning of New York's so-called "No-Fault Law," N.Y. Ins. Law § 5101 *et seq*. For the reasons that follow, this Court agrees.

#### A. The "Serious Injury" Requirement

New York's "no-fault" law precludes recovery for non-economic loss resulting from negligence in connection with a motor vehicle accident except where the plaintiff has suffered a "serious injury." N.Y. Ins. Law § 5104(a) (McKinney 2008), <u>Shamanskaya v. Ma</u>, No. 07-CV-1974 (RRM), 2009 WL 2230709, at *4 (E.D.N.Y. July 24, 2009). A "serious injury" is defined as: (1) death; (2) dismemberment; (3) significant disfigurement; (4) a fracture; (5) loss of a fetus; (6) permanent loss of use of a body organ, member, function or system; (7) permanent consequential limitation of use of a body organ or member [hereinafter "permanent consequential limitation"]; (8) significant limitation of use of a body function or system [hereinafter "significant limitation"]; or (9) a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment [hereinafter "90/180 category" or "90/180 claim"]. See <u>Shamanskaya</u>, 2009 WL 2230709, at *4 (citing N.Y. Ins. Law § 5102(d) (McKinney 2008)).

As an initial matter, plaintiffs appear to have abandoned their claims on behalf of Abraham Thomas, as they admit that none of the aforementioned categories applies to him and

their opposing papers advance no arguments regarding the extent of his injuries. See Thomas Pls. Rule 56.1 Statement ¶¶ 9–16, Thomas case D.E. #66; see generally Thomas Pls. Mem., Thomas case D.E. #64.

With regard to Anitha Thomas, the parties agree that the first four statutory categories are inapplicable. Compare O'Brien Defs. Rule 56.1 Statement ¶¶ 1, 2, 4, 5–7, Thomas case D.E. #56, with Thomas Pls. Rule 56.1 Response ¶¶ 1, 2, 4, 5–7, Thomas case D.E. #66. Additionally, plaintiffs do not contend that Anitha suffered "a permanent loss of use of a body organ, member, function or system." Cf. Thomas Pls. Mem. at 7, Thomas case D.E. #64 (stating that "a serious and permanent injury does not require proof of a *total loss* of an organ, member or function") (emphasis added); O'Brien Defs. Aff. ¶ 17, Thomas case D.E. #54 (indicating that plaintiff has proffered no evidence in support of a permanent loss claim); see also Shamanskaya, 2009 WL 2230709, at *4 n.4. Thus, as to Anitha, the only relevant categories here are permanent consequential limitation, significant limitation, and the 90/180 category.

Both the "significant" and "consequential" categories "relate[] to medical significance" and the assessment of a limitation of use or function under either category "involves a comparative determination of the degree or qualitative nature of an injury based on the normal function, purpose and use of the body part." Dufel v. Green, 84 N.Y.2d 795, 798 (1995) (internal citations and quotations omitted). A "permanent consequential limitation" requires proof of "permanency," Altman v. Gassman, 608 N.Y.S.2d 651, 651 (1st Dep't 1994), whereas a "significant limitation" requires only a showing that the injury is something more than a "minor, mild, or slight limitation of use . . . ." Licari v. Elliot, 57 N.Y.2d 230, 236

(1982). By contrast, courts assessing non-permanent injuries under the 90/180 category focus the inquiry on whether a medically confirmed injury or impairment prevented the injured party from conducting his or her regular daily activities such as work, and, if so, for what period of time. See, e.g., Knox v. Lennihan, 884 N.Y.S.2d 171, 172 (2d Dep't 2009); Camacho v. Dwelle, 863 N.Y.S.2d 754, 755 (2d Dep't 2008); see also Zeigler v. Ramadhan, 774 N.Y.S.2d 211, 213 (4th Dep't 2004) (to qualify as a serious injury under the 90/180 category, there must be objective evidence of a medically determined injury or impairment of a non-permanent nature, as well as evidence that plaintiff's activities were curtailed to a great extent).

Whatever the applicable category under the no-fault law, in order to prevail on a threshold motion for summary judgment, the defendant must first make a *prima facie* showing that the plaintiff has not sustained a serious injury. See Gaddy v. Eyler, 79 N.Y.2d 955, 956–57 (1992). The defendant may satisfy this initial burden with unsworn reports by the plaintiff's physicians, see McGovern v. Walls, 607 N.Y.S.2d 964, 965 (2d Dep't 1994), or with sworn affidavits or affirmations by the defendant's own retained physicians, see Marsh v. Wolfson, 587 N.Y.S.2d 695, 696 (2d Dep't 1992). If the defendant makes the requisite showing, the burden then shifts to the plaintiff to provide sufficient evidence to support his or her claim of serious injury. See Rand v. Volvo Fin N. Am., No. 04-CV-00349 (DLI) (KAM), 2007 WL 1351751, at *11 (E.D.N.Y. May 8, 2007). The plaintiff may defeat the defense motion only by submitting admissible evidence, in the form of *sworn* affidavits or affirmations by physicians substantiating the claim of serious injury. See id.; Buonaiuto v. Shulberg, 679 N.Y.S.2d 89, 90 (2d Dep't 1998) (unsworn medical report of plaintiff's examining physician

did not constitute competent proof to rebut defendant's *prima facie* case for summary judgment); Zeigler, 774 N.Y.S.2d at 214; Mirro v. Elite Car & Limo, 654 N.Y.S.2d 610, 611 (2d Dep't 1997). The sworn statements proffered by the plaintiff must provide "quantitative evidence from an expert with respect to diminished range of motion or an expert's qualitative assessment, based on objective evidence, comparing [the plaintiff's] present limitations to the normal function, purpose and use of the affected body organ, member, function, or system." Shamanskaya, 2009 WL 2230709, at *5 (quoting Clifford v. Burlington Motor Carriers, Inc., 2008 WL 268289, at *7 (E.D.N.Y. Jan. 29, 2008)). A plaintiff's subjective complaints of pain, by themselves, are not sufficient. See Shamanskaya, 2009 WL 2230709, at *5.

### B. Defendants' *Prima Facie* Showing

The O'Brien defendants (joined by cross-claim defendant Varughese) have satisfied their *prima facie* burden with regard to both permanent consequential and significant limitations by submitting the sworn statements of defendants' physician, Dr. Alan Zimmerman. In Dr. Zimmerman's evaluation of Abraham Thomas on August 27, 2009 , Dr. Zimmerman noted normal range of motion in Abraham's cervical spine, shoulders, lumbar spine, knees, and ankles. See O'Brien Defs. Aff. Ex. P, Thomas case D.E #54-16. He observed "no causally related disability" from the accident, and diagnosed Abraham with a pre-existing neurological condition. Id. Moreover, defendants satisfied their burden as to the 90/180 category by citing Abraham's testimony that he missed at most a day or two from work. See O'Brien Defs. Rule 56.1 Statement ¶ 16, Thomas case D.E. #56.

Pursuant to his evaluation of Anitha Thomas, Dr. Zimmerman reported that Anitha had

full range of motion in her cervical spine, shoulders, and knees.  See O'Brien Defs. Aff. ¶ 8 Ex. K, Thomas case D.E. #54-11.  He noted that Anitha ambulated without aid, and diagnosed her claimed post-accident injuries as sprains that were now resolved.  Id.  He also classified any MRI findings of her left knee and left shoulder as "degenerative and not traumatic in origin."  Id.

In addition, defendants have established a *prima facie* defense to Anitha's claim that she was unable to perform "substantially all of the material acts which constitute [her] usual and customary daily activities" during the requisite period under the 90/180 category.  Defendants cite deposition testimony in which Anitha expressly denied losing any time from work as a result of the accident.  O'Brien Defs. Aff. ¶ 8, Ex. J at 6 (transcript pp. 26, 27), Thomas case D.E. #54-10.  Such an admission severely undermines her serious injury claim.  See Hasner v. Budnik, 826 N.Y.S.2d 387, 388–89 (2d Dep't 2006) (testimony by plaintiffs that they had each missed fewer than 10 days of work undermined their respective 90/180 claims).  While it is true that Anitha was on summer break from her job as a schoolteacher at the time she was injured, she commenced work on schedule -- within a matter of a week from the accident.  This case is thus distinguishable from Nasi v. Giraudin, 557 N.Y.S.2d 718, 719 (3d Dep't 1990), where the alleged injuries occurred *month*s before the actual start of the academic year, and the defendant's exclusive reliance on the plaintiff-teacher's post-injury period during summer vacation was therefore held insufficient to support a *prima facie* defense to a serious injury claim.

Therefore, based upon the sworn submissions proffered by the O'Brien defendants, an adequate *prima facie* showing has been made against plaintiffs Anitha and Abraham Thomas,

and the burden shifts to plaintiffs to establish the existence of genuine issues of material fact as to whether they did in fact sustain serious injuries as a result of the automobile accident.

### C. Plaintiffs' Rebuttal Evidence

As previously noted, plaintiffs do not dispute that Abraham Thomas suffered no category of "serious injury" as recognized under the insurance law. Since defendants have satisfied their *prima facie* burden, this Court grants them summary judgment against Abraham Thomas.

With regard to Anitha Thomas, plaintiffs fail to provide objective evidence in the proper form to defeat the defense motion for summary judgment. Instead, they submit in opposition: (a) medical reports from Dr. Bryan Massoud; (b) dictated office notes from Orthopaedic Associates dated August 23, 2005, and an additional series of office notes signed by Dr. Robert Greenblum, Dr. Lee Berger, and Dr. Massoud, and dated September 20, 2005, February 23, 2006, and December 18, 2008, respectively; (c) an MRI report of the cervical spine dated August 23, 2005; (d) an MRI report of the left knee dated August 23, 2005; (e) an MRI report of the left shoulder dated October 15, 2005; and (f) "daily treatment notes" from Anitha's physical therapy sessions. See Thomas Pls. Aff. ¶ 3, Thomas case D.E. #65. As defendants correctly observe, none of these materials has been properly sworn in the form of an affidavit or admissible affirmation.[6] See O'Brien Defs. Reply Mem. at Pt. X (citing

---

[6] In fact, each of the cases cited by plaintiffs in support of their rebuttal evidence turned on sworn submissions by treating physicians or other medical experts. See Abedin v. Tynika Motors, 719 N.Y.S.2d 698, 699 (2d Dep't 2001) (affirmation of treating orthopedist); McVey v. Collins, 692 N.Y.S.2d 126, 127 (2d Dep't 1999) (affidavit of treating chiropractor); Livai v. Amoroso, 658 N.Y.S.2d 973 (2d Dep't 1997) (affirmation of treating physician); Risbrook
(continued…)

Buonaiuto, 679 N.Y.S.2d at 89), Thomas case D.E. #68.  This deficiency is fatal to plaintiffs' rebuttal, and Anitha's continued complaints that her injuries prevent her from completing daily tasks, see Thomas Pls. Mem. at 9, Thomas case D.E. #64, are simply insufficient to overcome defendant's *prima facie* showing.  Consequently, the Court grants summary judgment in favor of defendants and cross-claim defendant Varughese against Anitha Thomas on these grounds.

## CONCLUSION

For the foregoing reasons, the Court denies summary judgment to plaintiff Varughese on the issue of liability in the Varughese case, thereby also preserving the cross-claims against him in the Thomas case; and grants summary judgment to the O'Brien defendants and third-party defendant Varughese against plaintiffs Abraham Thomas and Anitha Thomas in the Thomas case, dismissing their claims in that action.

        SO ORDERED

Dated:        Brooklyn, New York
                February 23, 2010

                                      ROANNE L. MANN
                                      **UNITED STATES MAGISTRATE JUDGE**

---

[6](…continued)
v. Coronamos Cab Corp., 664 N.Y.S.2d 75, 76 (affidavit of treating physician).